UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GS HOLISTIC, LLC,

                  Plaintiff,

    v.

SUPERIOR SMOKE LLC, et al.,

                  Defendants.

CASE NO. C24-1726JLR

ORDER

## I.    INTRODUCTION

Before the court is Plaintiff GS Holistic, LLC's ("GS Holistic") motion for entry of default judgment against Defendants Superior Smoke LLC ("Superior Smoke") and Joseph Marquez-Ramos (together, "Defendants"). (Mot. (Dkt. # 10); *see* Prop. Judgment (Dkt. # 10-4).) The court has considered GS Holistic's motion, the materials it submitted in support of its motion, the relevant portions of the record, and the governing law. Being fully advised, the court GRANTS in part and DENIES in part GS Holistic's motion for entry of default judgment.

## II.    BACKGROUND

GS Holistic is a Delaware limited liability corporation that has its principal place of business in California.  (Compl. (Dkt. # 1) ¶ 4.)  It alleges that it is the owner of the "Stündenglass" trademark, has worked to distinguish the Stündenglass brand as "the premier manufacturer of Gravity Infusers," and has devoted significant time and resources promoting and protecting its trademark.  (*Id.* ¶¶ 4, 7-9, 14.)  GS Holistic has registered the following trademarks:  (1) U.S. Trademark Registration No. 6,633,884 "for the standard character mark 'Stündenglass' in association with goods further identified in registration in international class 011"; (2) U.S. Trademark Registration No. 6,174,292 "for the design plus words mark 'S' and its logo in association with goods further identified in the registration in international class 034"; and (3) U.S. Trademark Registration No. 6,174,291 "for the standard character mark 'Stündenglass' in association with goods further identified in registration in international class 034" (together, the "Stündenglass Marks").  (*Id.* ¶ 10; *see also id.*, Ex. A (copies of trademark registrations).) GS Holistic asserts that consumers are willing to pay higher prices for "the recognized quality and innovation associated with the Stündenglass Marks." (*Id.* ¶ 20.)  Thus, genuine Stündenglass Gravity Infusers are priced at $599.95, while non-Stündenglass infusers with fake Stündenglass Marks sell for between $199.00 and $600.00.  (*Id.*)

Defendant Superior Smoke is a Washington limited liability company that has its principal place of business in Washington.  (*Id.* ¶ 5.)  Mr. Marquez-Ramos is a resident and citizen of Washington and is the governor of Superior Smoke.  (*Id.* ¶ 6.)  GS Holistic asserts that Defendants sold and continue to sell counterfeit products bearing the

1    Stündenglass Marks.  (*See, e.g.*, *id.* ¶¶ 26-39.)  On December 14, 2022, GS Holistic's

2    investigator visited Superior Smoke's location; observed that the shop had "an excess of

3    Gravity Infusers which appeared to display each of the Stündenglass Marks"; purchased a

4    Gravity Infuser "with Stündenglass Marks affixed to it" for $463.05; and determined that

5    the Gravity Infuser was a counterfeit product bearing "Infringing Marks."  (*Id.* ¶ 33; *see*

6    *also id.* ¶ 28 (defining the "Infringing Marks" as "reproductions, counterfeits, copies,

7    and/or colorable imitations of one or more of the Stündenglass Marks"); *id.*, Ex. B

8    (photographs of the allegedly infringing product).)

9        GS Holistic filed its complaint on October 22, 2024.  (*See id.* at 1.)  It alleges

10   claims under the Lanham Act against Defendants for counterfeiting and trademark

11   infringement in violation of 15 U.S.C. § 1114 and for false designation of origin in

12   violation of 15 U.S.C. § 1125(a).  (*Id.* ¶¶ 56-73.)  Among other relief, it seeks statutory

13   damages, costs of suit, a permanent injunction prohibiting Defendants from continuing to

14   infringe its Stündenglass trademarks, and an order requiring Defendants to deliver all

15   infringing materials to GS Holistic for destruction.  (*Id.* at 16-18.)

16       GS Holistic served its complaint on Superior Smoke on November 7, 2024, and it

17   served Mr. Marquez-Ramos on November 6, 2024.  (*See* Service Affs. (Dkt. ## 5-6).)

18   The Clerk entered default against both Defendants on January 8, 2025.  (Entry of Default

19   (Dkt. # 8).)  GS Holistic filed this motion for entry of default judgment on March 21,

20   2025.  (Mot.)

21

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

### III.    ANALYSIS

Below, the court sets forth the relevant legal standard and then evaluates GS Holistic's motion for entry of default judgment.

**A.    Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes the court to enter default judgment against a defaulting defendant upon the plaintiff's motion.  Fed. R. Civ. P. 55(a), (b)(2).  After default is entered, well-pleaded factual allegations in the complaint, except those related to damages, are considered admitted and are sufficient to establish a defendant's liability.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Entry of default judgment is left to the court's sound discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion, the court considers seven factors (the "*Eitel* factors"):  (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  After the court determines that default judgment is appropriate, it must then determine the amount and character of the relief that should be awarded.  *See TeleVideo*, 826 F.2d at 917-18.

1    **B.    Whether the *Eitel* Factors Favor Default Judgment**

2    The court preliminarily determines that default judgment is warranted in this case

3    because, on balance, the *Eitel* factors weigh in favor of such judgment.  The court

4    discusses each factor in turn.

5    <u>1.    Possibility of Prejudice to Plaintiff</u>

6    The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default

7    judgment is not entered.  *See PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

8    1177 (C.D. Cal. 2002).  Without default judgment, GS Holistic will suffer prejudice

9    because it will "be denied the right to judicial resolution" of its claims and will be

10   "without other recourse for recovery."  *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D.

11   388, 392 (C.D. Cal. 2005).  Thus, the first *Eitel* factor weighs in favor of entering default

12   judgment.

13   <u>2.    Substantive Merits and Sufficiency of the Complaint</u>

14   The second and third *Eitel* factors—the substantive merits of the plaintiff's claim

15   and the sufficiency of the plaintiff's complaint—are frequently analyzed together.

16   *PepsiCo*, 238 F. Supp. 2d at 1175.  For these two factors to weigh in favor of default

17   judgment, the complaint's allegations must be sufficient to state a claim for relief.

18   *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  A complaint satisfies this

19   standard when it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to

20   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

21   *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)).  At the default judgment

22   stage, the court "must take the well-pleaded factual allegations [in the complaint] as true"

1    but "necessary facts not contained in the pleadings, and claims which are legally

2    insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d

3    1261, 1267 (9th Cir. 1992).

4        GS Holistic alleges claims for trademark counterfeiting and infringement under 15

5    U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a).  (Compl.

6    ¶¶ 56-73.)  The court reviews each in turn.

7                    a.    *Trademark Counterfeiting and Infringement*

8        To prove liability for trademark infringement, the trademark holder must

9    demonstrate: (1) "ownership of a valid mark (i.e., a protectable interest)"; and (2) the

10   alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to

11   deceive" consumers.  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir.

12   2006) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596,

13   602 (9th Cir. 2005)).

14       First, uncontested proof that the plaintiff has registered the mark is sufficient to

15   establish ownership of a valid mark.  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118,

16   1124 (9th Cir. 2014).  Thus, because GS Holistic alleges that it registered the

17   Stündenglass Marks, it satisfies the first element of trademark infringement for the

18   purpose of default judgment.  (Compl. ¶ 10; *see id.*, Ex. A.)

19       Second, "[l]ikelihood of confusion exists when consumers viewing the mark

20   would probably assume that the goods it represents are associated with the source of a

21   different product identified by a similar mark."  *KP Permanent Make-Up*, 408 F.3d at

22   608.  Courts generally evaluate eight factors to determine whether confusion is likely:

"1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets." *Id.*  Where a defendant uses a counterfeit mark, however, courts both within and outside the Ninth Circuit presume a likelihood of consumer confusion.  *See Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (compiling cases); *see also Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010) ("To find a likelihood of confusion, a court need only determine that the items at issue are counterfeit and that the defendant distributed, offered for sale, or sold the items.").  The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.

Here, GS Holistic alleges that its investigator purchased a Gravity Infuser with the Stündenglass Marks "affixed" to it and determined that it was a counterfeit product that displayed the "the Infringing Marks." (Compl. ¶ 33.)  GS Holistic further alleges that the "Infringing Marks" are "reproductions, counterfeits, copies and/or colorable imitations of one or more of the Stündenglass Marks." (*Id.* ¶ 28.)  Accordingly, the court concludes that GS Holistic has sufficiently alleged that Defendants sold a product bearing a counterfeit mark and, as a result, there is a presumption of consumer confusion.  *See Coach, Inc.*, 2013 WL 5406220, at *3.  Thus, because GS Holistic has demonstrated that it owns a valid mark and that Defendants' use of the mark is likely to cause consumer

1  confusion, the court concludes that GS Holistic has sufficiently alleged a trademark

2  counterfeiting and infringement claim.

3           b.    *False Designation of Origin*

4           To show liability for false designation of origin, the plaintiff must show that the

5  defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or

6  misleading description, or representation of fact, which (3) is likely to cause confusion or

7  misrepresents the characteristics of his or another person's goods or services." *Freecycle*

8  *Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). As to the first two elements, GS

9  Holistic alleges that Defendants sold (and thus, used in commerce) at least one Gravity

10 Infuser bearing its registered trademarks. (Compl. ¶¶ 33-34.) And the court concluded

11 above that GS Holistic has plausibly alleged a likelihood of confusion resulting from

12 Defendants' use of the trademarks. Accordingly, GS Holistic has stated a false

13 designation of origin claim.

14          Because GS Holistic has demonstrated that its claims have substantive merit and

15 that it has sufficiently alleged the claims in its complaint, the court concludes that the

16 second and third *Eitel* factors weigh in favor of default judgment.

17          3.    Sum of Money at Stake

18          Under the fourth *Eitel* factor, "the court must consider the amount of money at

19 stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp.

20 2d at 1176. Here, GS Holistic seeks (1) $150,000 in statutory damages—$50,000 per

21 Stündenglass trademark—for willful trademark counterfeiting and (2) litigation costs

22 totaling $842.00. (*See* Mot. at 12-15.) The court concludes that the requested statutory

1    damages and costs are not so unreasonable in relation to the conduct alleged in the

2    complaint as to weigh against entry of default judgment.

3        4.      Possibility of a Dispute over Material Facts

4        "The fifth *Eitel* factor considers the possibility of dispute as to any material facts

5    in the case." *PepsiCo*, 238 F. Supp. 2d at 1177.  Where, as here, the defendant has

6    defaulted, the court must take all well-pleaded allegations in the complaint as true, except

7    those related to damages.  *TeleVideo*, 826 F.2d at 917-18; s*ee also Wecosign, Inc. v. IFG*

8    *Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) ("Where a plaintiff has filed

9    a well-pleaded complaint, the possibility of dispute concerning material facts is

10   remote.").  Thus, the court concludes there is little risk of dispute over material facts and

11   the fifth *Eitel* factor weighs in favor of granting default judgment.

12       5.      Excusable Neglect

13       The sixth *Eitel* factor considers the possibility that the defendant's default resulted

14   from excusable neglect.  *PepsiCo*, 238 F. Supp. 2d at 1177.  Here, GS Holistic has

15   provided evidence that Defendants were properly served (*see* Service Affs.), and there is

16   no evidence in the record that Defendants' failure to answer or respond is the result of

17   excusable neglect.  Accordingly, the court concludes that the sixth *Eitel* factor weighs in

18   favor of default judgment.

19       6.      Policy Favoring Decisions on the Merits

20       "Cases should be decided upon their merits whenever reasonably possible." *Eitel*,

21   782 F.2d at 1472.  Where, as here, a defendant fails to appear or defend itself in action,

22   however, the policy favoring decisions on the merits is not dispositive.  *PepsiCo*, 238 F.

1    Supp. 2d at 1177.  Therefore, the court concludes that the seventh *Eitel* factor does not

2    preclude entry of default judgment.

3          In sum, because the *Eitel* factors weigh in favor of default judgment, the court

4    concludes that entry of default judgment is warranted in favor of GS Holistic on its

5    claims against Defendants.

6    **C.    Requested Relief**

7          The court now turns to the issue of remedies.  "A default judgment must not differ

8    in kind from, or exceed in amount, what is demanded in the [complaint]."  Fed. R. Civ. P.

9    54(c); *see Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962).  Defaulting

10   defendants are not deemed to have admitted the facts alleged in the complaint concerning

11   the amount of damages.  *TeleVideo*, 826 F.2d at 917.  Rather, the plaintiff "must 'prove

12   up' the amount of damages that it is claiming."  *Philip Morris USA, Inc. v. Castworld*

13   *Prod., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *see also* Local Rules W.D. Wash.

14   LCR 55(b)(2) (requiring plaintiffs to support motions for default judgment with evidence

15   establishing entitlement to damages).  By analogy, plaintiffs must also "prove up" their

16   entitlement to other forms of relief, such as a permanent injunction.  *See Gucci Am., Inc.*

17   *v. Tyrrell–Miller*, 678 F. Supp. 2d 117, 120-21 (S.D.N.Y. 2008).

18         GS Holistic requests statutory damages, litigation costs, injunctive relief, and

19   destruction of the infringing products.  (*See* Mot. at 12-16.)  The court considers each

20   remedy below.

21

22

ORDER - 10

1                 1.    <u>Statutory Damages</u>

2          Under the Lanham Act, a plaintiff may elect whether to recover its actual damages

3 caused by the defendants' use of a counterfeit mark or statutory damages.  15 U.S.C.

4 § 1117(c).  GS Holistic has elected to seek statutory damages.  (Mot. at 12-14; *see*

5 Compl. at 16 (including statutory damages in its prayer for relief).)

6          The court has discretion to award statutory damages between $1,000 and $200,000

7 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed,

8 as the court considers just."  15 U.S.C. § 1117(c)(1).  If, however, the court finds that the

9 trademark violation was willful, it may award up to $2,000,000 for each infringement.

10 *Id.* § 1117(c)(2).  "[S]tatutory damages may compensate the victim, penalize the

11 wrongdoer, deter future wrongdoing, or serve all those purposes."  *Y.Y.G.M. SA v.*

12 *Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 824 (2024),

13 (citing *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994)).

14 When determining the appropriate amount of statutory damages to award on default

15 judgment, courts consider whether the amount bears a "plausible relationship to [the

16 p]laintiff's actual damages."  *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal.

17 2014) (quoting *Adobe Sys., Inc. v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5

18 (N.D. Cal. Jan. 19, 2010)).  That is, although a plaintiff in a trademark infringement suit

19 is entitled to damages that will compensate and serve as a deterrent, "it is not entitled to a

20 windfall."  *Id.*

21          GS Holistic requests statutory damages of $50,000 for each of its registered

22 trademarks, for a total of $150,000.  (Mot. at 14.)  GS Holistic's evidence of its actual

1    damages caused by Defendants' trademark violations, however, is limited to allegations

2    that its investigator observed "an excess of Gravity Infusers which appeared to display"

3    the Stündenglass Marks and purchased a single infuser "with Stündenglass Marks affixed

4    to it" for $463.05.  (*See* Compl. ¶ 33.)  GS Holistic attaches to its motion and complaint

5    photos of Superior Smoke and what appears to be two allegedly counterfeit Stündenglass

6    infusers, including one that its investigator purchased from Superior Smoke.  (*See id.*, Ex.

7    B; Mot., Ex. B at 2 (investigator's declaration), 3-24 (photographs).)  GS Holistic also

8    contends that its chief executive officer's ("CEO") declaration establishes that $150,000

9    is "only a fraction of the actual losses to its business" caused by counterfeiters.  (Mot. at

10   13.)  That declaration, however, says nothing about the damages specifically caused by

11   the Defendants in this case.  (*See generally* Folkerts Value Decl. (Dkt. # 13).)  The court

12   is sympathetic to the difficulties GS Holistic faces in estimating actual damages with any

13   degree of certainty without the benefit of Defendants' cooperation in discovery.  Without

14   more evidence, however, the court cannot conclude that an award of $50,000 in statutory

15   damages for each of GS Holistic's three registered trademarks bears a "plausible

16   relationship" to the damages GS Holistic actually suffered as a result of Defendants'

17   conduct.  *Yelp Inc.*, 70 F. Supp. 3d at 1102.

18        Because GS Holistic alleges that the Gravity Infuser its investigator purchased had

19   the three Stündenglass Marks "affixed to it" (Compl. ¶ 33), the court concludes that GS

20   Holistic is entitled to statutory damages based on Defendants' conduct with respect to the

21   three trademarks.  The court further concludes that an award of $15,000—$5,000 per

22   trademark—will serve the compensatory, penal, and deterrent purposes of statutory

1  damages without resulting in an undue windfall for GS Holistic.  Accordingly, the court

2  awards GS Holistic statutory damages of $15,000.[1]

3         2.      Litigation Costs

4         The Lanham Act also provides that a plaintiff who establishes that a defendant has

5  violated a trademark "shall be entitled, . . . subject to the principles of equity, to

6  recover . . . the costs of the action."  15 U.S.C. § 1117(a).  Here, GS Holistic seeks costs

7  in the total amount of $842.00, consisting of the filing fee ($402.00) and its process

8  server fee ($440.00).  (Mot. at 15 (citing Harris Decl. (Dkt. # 11) ¶ 6); *see* Compl. at 16

9  (including costs of suit in the prayer for relief).)  The court awards GS Holistic its

10  requested costs.

11         3.      Injunctive Relief

12         GS Holistic asks the court to enter a permanent injunction enjoining Defendants

13  and "their agents, employees, officers, directors, owners, representatives, successor

14  companies, related companies, and all persons acting in concert or participation with"

15  them from:

16         (a) Import,  export,  making,  manufacture,  reproduction,  assembly,  use,
              acquisition,  purchase,  offer,  sale,  transfer,  brokerage,  consignment,

17

18         [1] GS Holistic cites several cases in which courts in other districts awarded it statutory damages of $150,000 or more on default judgment.  (*See* Mot. at 15 (compiling cases).)  The court respectfully disagrees with the reasoning set forth in these decisions and finds far more

19  persuasive the reasoning set forth in cases concluding that a lower measure of damages is appropriate.  *See, e.g.*, *GS Holistic, LLC v. MSA-Bossy Inc.*, No. 22-CV-07638-JSC, 2023 WL 3604322, at *6 (N.D. Cal. May 22, 2023) (noting that GS Holistic's request for $150,000 in

20  statutory damages was "out of all proportion to its actual damages" and awarding statutory damages of $5,000); *GS Holistic, LLC v. A Robinson Recycling Ctr. LLC*, No. 2:22-CV-002087-

21  DJC-JDP, 2024 WL 4930437, at *4 (E.D. Cal. Dec. 2, 2024), *report and recommendation adopted*, No. 2:22-CV-2087-DJC-JDP, 2025 WL 253306 (E.D. Cal. Jan. 21, 2025) (awarding

22  $5,000 in statutory damages where GS Holistic proved only one instance of infringement).

distribution, storage, shipment, licensing, development, display, delivery, marketing[,] advertising or promotion of the counterfeit Stündenglass products identified in the complaint and any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof[.]

(Mot. at 15-16.)  The court denies GS Holistic's request.

The Lanham Act empowers courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark."  15 U.S.C. § 1116(a).  A plaintiff seeking a permanent injunction must demonstrate:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (interpreting similar language in considering a motion for permanent injunctive relief under the Patent Act). Here, however, GS Holistic argues only that it is entitled to injunctive relief "[b]y the reasons explained in [its] Complaint and pursuant to 15 U.S.C. § 1116[.]" (Mot. at 15-16.)  It does not address the factors a court must consider before entering a permanent injunction.  (*See id.*); *see eBay Inc.*, 547 U.S. at 391.  Therefore, the court denies GS Holistic's request for a permanent injunction.

4.    Destruction of Infringing Products

Finally, GS Holistic seeks an order directing Defendants, "at their cost, [to] deliver to [GS Holistic] for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptables, advertisements, and other material in their possession, custody or

ORDER - 14

1    control bearing any of the Stündenglass Marks." (Mot. at 16.)  The Lanham Act

2    authorizes the court to issue an order directing the destruction of articles that infringe

3    upon a trademark.  15 U.S.C. § 1118.  Again, however, GS Holistic has not presented any

4    argument or evidence supporting its entitlement to this relief.  (*See* Mot. at 16.)  As a

5    result, the court denies GS Holistic's request for an order directing the destruction of

6    allegedly infringing products.

7                              **IV.    CONCLUSION**

8            For the foregoing reasons, the court GRANTS in part and DENIES in part GS

9    Holistic's motion for default judgment (Dkt. # 10).  Specifically, the court GRANTS GS

10   Holistic's request for entry of default judgment against Defendants; AWARDS GS

11   Holistic $15,000.00 in statutory damages and $842.00 in litigation costs; and DENIES

12   GS Holistic's motion in all other respects.

13           Dated this 1st day of April, 2025.

14

15   _____

16   JAMES L. ROBART
     United States District Judge

17

18

19

20

21

22